AMBROSE SNOW et al., Appellants, *v.* THE COLUMBIAN INSURANCE COMPANY, Respondent.

Warranties in a policy of insurance must be strictly and perfectly complied with; this strict compliance, however, operates in favor of as well as against the assured when he brings himself within the terms thereof.

A warranty in a policy of marine insurance not to use a certain port means not to go into it. Going near or in the direction of the prohibited port is not a breach of the warranty, and this is so although the vessel was approaching with intent to enter the port. The fact, and not the intent, gives the legal character to the transaction. Where, therefore, a vessel covered by a policy containing such a warranty, while sailing toward the prohibited port with intent to enter it, is lost before reaching it, there is no breach of the warranty and the under-writers are liable.

(Argued January 10, 1872; decided May term, 1872.)

APPEAL from order of the General Term of the Supreme Court in the first judicial district, setting aside a verdict in favor of the plaintiff and directing a new trial. The action is upon a policy of marine insurance.

Plaintiffs were copartners under the firm name of Snow & Burgess

On the 9th day of September, 1864, in consideration of the

premium of $660, the defendant made and delivered to the plaintiffs its policy of insurance, by which the defendant insured the plaintiffs for $6,000 upon the schooner Caspian, then owned by the plaintiffs and lying in the port of Boston, Massachusetts, from the 8th day of September, 1864, at noon, until the 8th day of September, 1865, at noon. The policy contained the following clause:

"Warranted not to use ports on the continent of Europe north of Hamburgh, nor to go east of Navarino in the Mediterranean, during the period insured; nor ports on the continent of Europe north of Antwerp between first November and first March; nor ports in the British North American provinces, except between the fifteenth day of May and fifteenth day of August; also, warranted not to use the West India Islands during the month of August and September; also, warranted not to use ports and places in Texas, except Galveston, nor foreign ports and places in the Gulf of Mexico, nor places on or over Ocracoke bar; nor any of the West India salt islands; nor ports or places on the west coast of America, north of Benicia, during the period insured; nor to use the Min river, nor Torres Straits."

On the 20th of September, 1864, said schooner sailed from Boston in ballast and stores, bound for the port of Lingan, in the island of Cape Breton, in the province of Nova Scotia, one of the British North American provinces, for the purpose of taking in a cargo of coal. The vessel proceeded on her voyage, and on the night of the twenty-fourth of September was wrecked and totally lost on the coast of the Island of Cape Breton, within sight of the Louisburgh light on said island, and about fifty miles from said port of Lingan.

The defendant's counsel moved for a dismissal of the complaint, upon the ground that the warranty in the policy not to use ports in the British North American provinces, except between the fifteenth May and fifteenth August, having been violated, the plaintiffs were not entitled to recover.

The court refused the motion, and ordered a verdict for the plaintiffs for $5,782.33.

Exceptions were ordered to be heard at first instance at General Term.

*Richard H. Huntley* for the appellants. The vessel was not *using* a prohibited port when lost. (1 Duer on Ins., 16, § 15; *Teaton* v. *Fry*, 5 Cranch. R., 335; *Palmer* v. *The Warren Ins. Co.*, 1 Story R., 362; *Notman* v. *The Anchor Ins. Co.*, 4 J. Scott R. [N. S.], 470.) An intent to violate the warranty does not constitute a breach. (1 Parsons on Ins., 487, note; *Middlewood* v. *Blakes*, 7 T. R., 168, opinion of Lawrence, J.; *Tasker* v. *Cunningham*, 1 Bligh. P. C., 99; *N. Y. Fireman's Ins. Co.* v. *Lawrence*, 14 Johns., 46; *Marine Ins. Co.* v. *Tucker*, 3 Cranch., 357; 2 Pars. Mar. Ins., 39; 1 Phil. Ins., §§ 937, 1001.) The precise import of the words used in the warranty, not the presumable purposes or probable intent, controls in *Notman* v. *The Anchor Ins. Co.* (4 J. Scott [N. S.], 470), and as in 2 Bing. N. C., 383; 2 Maule. & S., 111; 2 Taunt., 423.

*Dudley Field* for the respondent. Contracts are to receive such an interpretation as will give every stipulation reasonable effect. (*Ward* v. *Whitney*, 8 N. Y., 446; *Decker* v. *Furniss*, 14 id., 622; *Hamilton* v. *Taylor*, 18 .id., 358; *Richards* v. *Waring*, 39 Barb., 42; *James* v. *Tallent*, 5 Barn. & Ald., 889.) If there is doubt, the clause is to be interpreted as the insured had reason to believe the insurer understood it. (*Barlow* v. *Scott*, 24 N. Y., 40.) The clause is to be construed most strongly against the insured. (2 Parsons, 5th ed., 506.) A voyage to and an intent to enter a prohibited port was a breach, and, whether material or not, exonerates the insurer. (2 Par. Mar. Law, 104; *Newcastle Ins. Co.* v. *Macmoran*, 3 Den., 225; *Blackhurst* v. *Cockell*, 3 Term., 360; *De Hahn* v. *Hartley*, 1 id., 343; 2 id., 186; *Forbes* v. *Church*, 3 Johns. Cas., 159; *Tasker* v. *Cunningham*, 1 Bligh., 87; *Woolridge* v. *Boydell*, 1 Doug., 16; *Way* v. *Modigliani*, 2 Term. Rep., 30; *Stocker* v. *Harris*, 3 Mass., 409; *Sellar* v. *McVicar*, 1 Bos. & Pul. N. R., 23;

*Marine Ins. Co.* v. *Stras,* 1 Munf., 408; 2 Pars. Mar. Law, 209.)

Hunt, C.   Warranties must be strictly and perfectly complied with.   (Phil. Ins., § 762.)   It is not enough that they be substantially complied with.   (Id.)   The compliance must be full and complete, through not necessarily literal.   (Id., § 762, 766.)   Mr. Justice Kent said, in *Kemble* v. *Rhinelander* (3 John. Cas., 130), that "a warranty must be literally complied with, but this strict compliance ought to operate in favor of as well as against the assured whenever he can bring himself within the terms of it."   In the case of a warranty that "the ship should have twenty guns," and she had, in fact, twenty-two guns, but only twenty-five men, a number short of the necessary complement for twenty guns, there being no ground to impute fraud, Lord Mansfield held this to be a compliance with the warranty, and that the assured was entitled to recover.   (*Hyde* v. *Bruce,* Marsh, 347; 3 Dougl., 213, cited; 1 Phil. Ins., § 767.)

That the assured have literally complied with and kept their warranty in this case can scarcely be doubted.   A vessel cannot be said to have used a particular port when it is conceded that she has not been within fifty miles of it.

"To use," means to employ, to hold, to occupy, to enjoy, or take the benefit of, as a chair, a book, or possess a harbor. In connection with the word "port," it means to go into a harbor or haven for shelter, for commerce or for pleasure, and to derive a benefit or an advantage from its protection. Going near a harbor or port, sailing past or going in the direction of it, is not a use of the port.   Certain ports, it is declared in the warranty, shall not be used, as those on the continent of Europe north of Hamburg, nor ports in the British North American provinces, except at certain dates, nor the West India Islands at certain dates, nor certain ports of Texas, etc.   That this exclusion refers to places specifically, and not to the regions adjacent, is evident, from the fact that, as to Navarino in the Mediterranean, the exclusion

is directed in form to the region as distinguished from the port. It is stipulated in that case, without reference to ports or places, that the vessel shall not " go east of Navarino in the Mediterranean during the period insured." If the vessel shall go east of that port, whether she enters any or all the ports thereabouts, or returns having entered no port, the warranty is broken. As to Texas, again, the warranty is peculiar, " not to use ports and places in Texas except Galveston." The region is not excluded. One port is not excluded. All other ports are excluded, and the entry into any one of them, except Galveston, would constitute a breach of the warranty. The distinction between traversing a region and entering into a port or harbor in the region, was evidently in the view of the contracting parties. This is an answer to the argument " that it was the clear intent of the underwriter, in this restriction, to guard against the danger which arises from navigating near the coast of the British provinces at certain seasons of the year." The language is singularly unfortunate to embrace such a proposition. It imports that, in certain latitudes, the regions were, themselves, deemed to be dangerous, and that the vessel must not enter those regions; that in other latitudes the underwriters had no fears of the region, provided the dangers of using certain harbors or ports were avoided. To meet the case, certain ports in the north of Europe and on the British North American coasts are excluded, the region being open for use, while in the Mediterranean and in the Gulf certain regions must not be entered by the vessel.

The defendant insists again that an intention to enter the prohibited port creates a breach of the warranty. I cannot concur in this argument. No authority is cited to sustain it, and it is against all principle. In the matter of performing contracts, except on some nice points of deviation, the intention is not usually important. It is the act or fact by which the result is determined. A man may determine to violate his contract or to defraud his neighbor a thousand times, and in a thousand ways, and yet not place himself within the

reach of the law.   He may perform his contract when he
intends to violate it.   If his acts are right, a secret bad intent
cannot injure him; nor, if his acts are wrong, can a good
intent save him.   If the assured intended to go to some other
port in Texas than Galveston, but in fact went directly to
Galveston, and the vessel was lost while in that port, there
would be no breach of her warranty.   But if her master vol-
untarily carried his vessel east of Navarino in the Mediterra-
nean, although he did not intend to go east of that port, and
did not know that he had done so, his warranty would be
broken.   In such case the fact and not the intent to keep the
warranty or to violate it gives the legal character to the trans-
action.   (2 Pars. Mar. Law, chap. 3, § 1.)   When the ques-
tion is one of deviation, the point of when and where the
departure commences may be important.   The point here is
upon the warranty not to enter a certain port, and is not a
question of deviation.

The case of *Stevens* v. *The Com. M. Ins. Co.* (26 N. Y.,
397) is cited by the respondent.   In that case the vessel was
"warranted not to use ports or places in Texas, except Gal-
veston, nor in the Gulf of Mexico."   Permission was after-
ward given " to use the port of Laguna for her voyage, with-
out prejudice to this insurance."   The vessel arrived at
Laguna, but did not enter that port.   It not being a port of
entry, the custom-house officers would not permit the entry.
She then sailed for Sisal, for the purpose of paying the duties,
and intending to return to Laguna for her cargo.   At Sisal
she went ashore and was lost.   The Court of Appeals held
that the entry at Sisal was not justified, and that the warranty
was broken.   I should say that the real question in that case
was whether the permission to enter the port of Laguna
carried with it the power to take all measures necessary to
effect that purpose, or whether the permission was to be lite-
rally construed.   At any rate, the case bears no analogy to
the one we are considering.

In my opinion there was no breach of warranty by the
assured.   The order of the General Term should be reversed,

and the plaintiffs should have judgment on the verdict, with costs.

EARL, C.    The only question in this case arises out of a warranty in the policy that the vessel should not " use ports in the British North American provinces, except between the 15th day of May and the 15th day of August." On the 20th day of September, 1864, the vessel sailed, bound for the port of Lingar, in the Island of Cape Breton, in the Province of Nova Scotia, one of the British North American provinces, for the purpose of taking in a cargo of coals, and while on her way, and before reaching the destined port, she was wrecked on the coast of the Island of Cape Breton, about fifty miles from said port.

Precise and definite language is used in the policy in reference to the warranty, and if it had been intended to prohibit the vessel from sailing along or near the coast of the British North American provinces, the prohibition would probably have been inserted in apt and proper language. The underwriters deemed it sufficient to prohibit the *use* of the forbidden ports, and we cannot give the language used a broader signification than its ordinary and plain meaning requires. If, after applying the ordinary canons of construction, the meaning remains in doubt, the doubt must be construed against the underwriters who wrote the policy and adopted the language which creates the doubt.

To sail toward a port, and to come within fifty miles of it, is not, within any sense of the term, to *use* it. This is not claimed; but it is claimed that the *intention to use* is as much a violation of the policy as the actual *use* of the port. This claim is not founded in reason or authority. A mere intention to violate a policy can never have the effect of an actual violation. The vessel, at the time of her loss, was not sailing in forbidden waters, and so long as she had not actually reached a forbidden place, the unexecuted intention to reach one cannot avoid the policy. (*N. Y. Fire Ins. Co.* v. *Lawrence*, 14 John., 46 ; *Marine Ins. Co.* v. *Tucker*, 3 Cranch., 357.)

Order of General Term reversed, and judgment for plaintiffs upon the verdict, with costs.

All concur.    LEONARD, C., not sitting.

Order reversed, and judgment for plaintiffs upon verdict.