THAMES & MERSEY MARINE INS. CO., Limited, v. O'CONNELL.[1]

(Circuit Court of Appeals, Ninth Circuit.   February 14, 1898.)

No. 375.

MARINE INSURANCE—PROHIBITED PLACES.

A marine insurance policy warranted a schooner not to use certain ports or places.  The schooner left San Francisco bound for Suislaw River, a prohibited place, and, in tempestuous weather, came to a buoy near the entrance to the river, was driven about, and anchored a mile from the entrance, where the chain broke, and the schooner was driven ashore, and wrecked.  *Held*, that when the schooner came up to the buoy, with the intention of entering the river, and afterwards anchored one mile from the entrance, it was using places prohibited by the policy, and the insurance company was not liable for the loss.

Gilbert, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Northern District of California.

Page & Eells, for appellant.
Andros & Frank, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

[1] Rehearing denied.

ROSS, Circuit Judge. This is an appeal from a decree given the libelant in the court below. The appellant, who was the respondent there, underwrote a policy of marine insurance on the interest of Thomas O'Farrell, the libelant's intestate, in the schooner Robert and Minnie, against perils of the seas and other perils in the policy mentioned. The policy contained, among other warranties, the following:

"(4) Not to use any ports or places on the west coast of America north of San Francisco, nor islands adjacent thereto, except Umpqua and Columbia Rivers, Humboldt, Coos, and Shoalwater Bays, Gray's Harbor, Sitka, Ounalaska, and St. Paul's Harbor, and ports inside the mouth of the Straits of Fuca; not to use any inside passage on the west coast of America north of Burrard's Inlet, nor ports or places on the east coast of Asia, north of Shanghai, nor islands adjacent thereto, except ports in Japan; nor to use Torres Straits, nor any guano island, nor to engage in inter-island trade, nor to go on a whaling, fishing, or trading voyage. It shall and may be lawful, however, for said vessel in her voyage to proceed and sail to, touch and stay at, any ports or places, if thereunto obliged by stress of weather or other unavoidable accident, without prejudice to this insurance."

On the margin of the policy this stipulation was written:

"It is understood and agreed that this company is not liable for any claim resulting from using ports or places not allowed by this policy."

While the policy was in force, the schooner, under command of O'Farrell, the assured, sailed from San Francisco bound to Suislaw River, in the state of Oregon, which was a port or place which the assured agreed and warranted that he would not use. It appears from the Pacific Coast Pilot, which was read in evidence, that this river was first reconnoitered by the Coast Survey in 1883, when the bar was found to be bad, and had only five feet of water upon it. It could then be crossed only on the flood tide near high water. It was then nearly a quarter of a mile across, and the channel narrow. But in 1887 the bar was found, not only to have changed its location, but from the northernmost point of the cliffs a great sand flat had made out fully three-fourths of a mile to the south, and changed the whole location of the bar. The Coast Pilot proceeds:

"It is therefore evident that only a local knowledge will serve to determine the peculiarities of the bar and channel at any time. * * * It is reported that the bar works around from the south to the north as far as possible, and then again breaks out near the south spit. When it is settled towards the north, it is claimed to carry nine feet of water; but that it has been less during the change. There is a sunken rock near the beach about half a mile to the southeast of the south spit."

During the voyage from San Francisco, the schooner was driven by tempestuous weather to a point about 65 miles to the northward of the entrance of the Suislaw River, having passed its entrance about 30 miles to the westward. The vessel then tacked, and proceeded to the southward, her master intending to take her into the river should he be able to secure the services of a tug to tow her in, which he expected would come out for that purpose. There was a buoy located a quarter of a mile outside of the bar, near the entrance of the river, which indicated the entrance to the channel over the bar. The schooner sailed right up to that buoy. The

tug could not then come out, on account of the rough···s of the bar and the lack of sufficient water thereon at the then stage of the tide. The schooner then stood off to sea about half a mile, and afterwards stood in towards, and came up to, the buoy. She then stood off again for a short time, but lost the wind, and drifted inshore to a point about one mile to the southward of the bar, where the master dropped anchor. Shortly after letting the anchor go, the heavy swell brought such a strain upon the chain that it parted, and the vessel in a few minutes drifted upon the shore, and was wrecked and totally lost. The vessel did not at any time while the policy was in force enter the river, nor was she nearer thereto than about one mile. The above facts were made to appear to the court below by an agreed statement, upon which the cause was determined there and is brought here.

By the fourth clause of the stipulations above quoted, the assured bound himself not to use any ports or places on the west coast of America north of San Francisco, nor islands adjacent thereto, except Umpqua and Columbia Rivers, Humboldt, Coos, and Shoalwater Bays, Gray's Harbor, Sitka, Ounalaska, and St. Paul's Harbor, and ports inside the mouth of the Straits of Fuca; and, by express agreement indorsed on the margin of the policy, it was covenanted that the insurer should not be liable for any claim resulting from using ports or places not allowed by the policy. This contract is the measure of the rights and obligations of the respective parties. Confessedly, Suislaw River was a place the assured was prohibited by the policy from using. Was not the buoy, which stood near the entrance to that river, and within a quarter of a mile from the bar and its immediate vicinity, equally a place the assured was prohibited by the policy from using for the purpose of getting into the river? Was not the point about one mile to the southward of the bar, where the assured dropped his anchor, equally a place the assured was prohibited by the policy from using, under the circumstances appearing in this case? Undoubtedly so; for they are all on the west coast of America, north of San Francisco, and neither of them is Umpqua or Columbia River, Humboldt, Coos, or Shoalwater Bay, Gray's Harbor, Sitka, Ounalaska, or St. Paul's Harbor, or any port inside the mouth of the Straits of Fuca, and neither of the places was so used by the assured in going where, under the policy, he had a right to go. Nor was the assured obliged by stress of weather or other unavoidable accident to sail to, touch, or stay at or near, the buoy, or at or near the Suislaw River, or at or near the point where he dropped his anchor. On the contrary, he was at those prohibited places in pursuance of the intent with which he started on his voyage, and in spite of tempestuous weather, which, so far from taking him to the prohibited vicinity, had taken him 65 miles to the northward and 30 miles to the westward of those places. It is idle to say that he did not use the prohibited places, when the agreed statement of facts shows that the assured sailed his schooner "right up to the buoy" in the endeavor to get into the Suislaw River. Was he not

"using" this place when he sailed his schooner there? And did he not "use" the place about one mile southward of the bar when he dropped his anchor there? Undoubtedly so. Each of these places and its immediate vicinity was as much prohibited by the terms of the policy as was the Suislaw River, when used, not in going where under the terms of the policy the assured had the right to go, but in the endeavor to enter a prohibited port.

Nothing more, we think, need be said to show that the judgment appealed from is erroneous. It is accordingly reversed, and the cause remanded, with directions to the court below to enter judgment for the respondent on the agreed statement of facts.

GILBERT, Circuit Judge (dissenting). I am unable to concur with the majority of the court in holding that the insured in this case used the Suislaw River in violation of the stipulations of the policy. It must be presumed that the contract of insurance expressed exactly the risks which the insurance company agreed to assume. The vessel was prohibited from using certain specified ports and places. She was free to go anywhere except to those ports or places. She had the right to traverse the open sea in any direction in going to and from any of the ports which the policy permitted her to use. She undoubtedly had the right to approach as near as possible to the Suislaw River without entering it. For aught that appears to the contrary, her ordinary route to or from some of the permitted ports would take her as near to the Suislaw River as the point where she was anchored when her chain parted, causing her to be drifted ashore. But the opinion of the majority of the court rests upon the fact that, notwithstanding that the vessel was not prohibited to approach that point, her master took her there on this particular occasion, with the intention of entering the Suislaw River. This leaves the decision of the case to turn upon the question of the intention with which the vessel approached the river. It would seem upon principle that no citation of authority would be necessary to sustain the position that the intention or the attempt to enter a prohibited port is not tantamount to using it. If the intention determines, then it would follow that if the vessel had cleared from San Francisco with the intention of entering a prohibited port, and immediately thereafter that intention had been abandoned, and she had been lost on her way to one of the permitted ports, there could be no recovery under the policy. I think that the principle announced in the case of Snow v. Insurance Co., 48 N. Y. 624, should be decisive of this case. In that case the court held that a warranty in a policy of marine insurance not to use a certain port means not to go into it, and that going near or in the direction of the prohibited port is not a breach of the warranty. Said the court by Earl, C.: "A mere intention to violate a policy can never have the effect of an actual violation. The vessel, at the time of her loss, was not sailing in forbidden waters, and, so long as she had not actually reached a forbidden place, the unexecuted intention to reach one cannot avoid the policy." In Wheeler v. Insurance Co., 35 N. Y. Super. Ct. 247, it was held that, where the words "to use"

were adopted in a covenant not to use certain ports and places, they meant "to go into a port, harbor, or haven for shelter, commerce, or pleasure, and to derive a benefit or advantage from its protection," and that to clear for a port or to sail for it is not to use it under the policy, and is not a violation of the warranty. In Insurance Co. v. Tucker, 3 Cranch, 357, a vessel was insured at and from Kingston, in Jamaica, to Alexandria; but she took in a cargo at Kingston for Baltimore and Alexandria, and sailed with the intent to go, first to Baltimore, and then to Alexandria. While on her way, and before reaching the point of deviation from the direct route from Kingston to Alexandria, she was captured. The court held that it was a case of intended deviation only, and that "an intent to do an act can never amount to the commission of the act itself." These authorities and others, in my opinion, sustain the proposition that where in a policy of insurance there is a warranty not to use a certain port, and the insured proceeds towards that port with the intention and in the attempt to use the port, but in fact goes to no point to which he is prohibited from going, and uses no place or port interdicted by the policy, there is no breach of the terms of the policy. It is to be presumed that the precise agreement of the parties has been specified in the contract, and that the vessel is free to go anywhere upon the high seas, or into any port or place except the interdicted ports and places. In this case the vessel was not to use the Suislaw River. It may be assumed that the insurance company declined to insure against the risks that might be encountered in that river, or, perhaps, in crossing the bar at its mouth. The vessel approached no nearer than the buoy, a quarter of a mile outside the bar. She did not use the river, although her master intended and attempted to use it. The policy did not prohibit the intention or the attempt to use it. It prohibited only the use. The contract of insurance has indemnity for its object, and it should be construed liberally to that end. "Stipulations are construed strictly against the party in whose favor they are made." 11 Am. & Eng. Enc. Law, 286; Catlin v. Insurance Co., 1 Sumn. 434, Fed. Cas. No. 2,522; Hoffman v. Insurance Co., 32 N. Y. 405; Insurance Co. v. Cropper, 32 Pa. St. 351. I think the decree should be affirmed.