WILLIAM P. DOLLIVER & others *vs.* ST. JOSEPH FIRE & MARINE INSURANCE COMPANY.

Essex.   Nov. 4, 1880. — April 5, 1881.   ENDICOTT & FIELD, JJ., absent.

The provision in a policy of insurance against fire, that a loss under it shall not be payable until the assured produces the certificate of loss of a magistrate "not concerned in the loss as a creditor," means a magistrate who is not concerned in the loss by reason of having an interest in the property insured or in the policy as security for an obligation to him, and does not disqualify a magistrate from acting who is a general creditor of the assured.

The statement in a policy of insurance against fire issued in midsummer, that the building insured is "used for the storage of ice," is not a warranty that ice is stored therein when the policy is written, but is descriptive of the business ordinarily done in the building.

If an application for a policy of insurance is made in writing, the insurance company has no right to rely upon a verbal representation made to the agent of the company by a clerk of the broker who procured the insurance; and such representation, though false, will not vitiate the policy.

CONTRACT, by the assignees in bankruptcy of Abraham Day, upon a policy of insurance, dated July 9, 1875, by which the defendant insured, for one year from July 3, 1875, "Abraham Day, against loss or damage by fire, to the amount of fifteen hundred dollars: $500 on two large frame ice-houses, $500 on two sheds, $250 on shed about two feet distant from the above, all used for storage of ice, and situate in rear of east side of road leading to Rockport in Gloucester, Mass.   $250 on frame shed attached to frame ice-houses."   The policy contained the following provisions:

"If an application, survey, plan or description of the property herein insured is referred to in this policy, such application, survey, plan or description shall be considered a part of this contract and a warranty by the assured; and any false representation by the assured of the condition, situation, or occupancy of the property, or any omission to make known every fact material to the risk, or an overvaluation, or any misrepresentation whatever, either in a written application or otherwise; or if the assured shall have, or shall hereafter make, any other insurance on the property hereby insured, or any part thereof, without the consent of the company written hereon; or if the above-mentioned premises shall be occupied or used so as to increase

the risk, or become vacant or unoccupied, and so remain without notice to, and consent of, this company, in writing; then, and in every such case, this policy is void.

"It is a part of this contract, that any person, other than the assured, who may have procured this insurance to be taken by this company, shall be deemed to be the agent of the assured named in this policy, and not of this company, under any circumstances whatever, or in any transaction relating to this insurance.

"Persons sustaining loss or damage by fire shall forthwith give notice of the loss to the company," "and shall also produce a certificate, under the hand and seal of a magistrate or notary public (nearest to the place of the fire, not concerned in the loss as a creditor, or otherwise, nor related to the assured,) stating that he has examined the circumstances attending the loss, knows the character and circumstances of the assured, and verily believes that the assured has, without fraud, sustained loss on the property insured to the amount which such magistrate or notary public shall certify."

After the former decision, reported 128 Mass. 315, the case was tried in this court, before *Colt*, J., who reported the case for the determination of the full court, in substance as follows:

It was admitted that the premises insured were destroyed by fire in October 1875, and the amount of damages chargeable to this policy was agreed upon by the parties. Day filed his petition in bankruptcy on January 24, 1876, and the assignment to the plaintiffs was dated April 3, 1876.

One ground of defence relied on was, that William P. Dolliver, the magistrate whose certificate was furnished by Day, was disqualified from acting as such magistrate. Upon this subject, it was admitted by the plaintiffs that Dolliver, at the time he gave this certificate, and at the time of the fire, was an unsecured creditor of Day, who then owed him between $400 and $500; and that he subsequently proved a claim for this debt in the bankruptcy proceedings. The whole amount of Day's indebtedness was about $40,000. No evidence was offered that there was any suspicion of Day's insolvency when the certificate was made. It was also agreed, that no objection was made to the certificate on the ground that Dolliver was a creditor until

April 16, 1878, when an amended answer was filed setting up this as a substantive ground of defence to this action; and that neither the counsel, nor any officer or agent of the defendant, had any knowledge or information whether Dolliver was a creditor or not until that day.

Upon these facts the judge ruled, that the fact that Dolliver was a general creditor of Day did not render him " concerned in the loss, as a creditor or otherwise," and that his certificate was a sufficient compliance with the terms of the policy; and that, if the certificate was insufficient, the defendant, having failed to make this objection, was estopped from setting it up, or must be held to have waived it.

The defendant introduced evidence tending to show that the ice-houses and the sheds, which had been built for storage of ice, had been leased in 1873 to one Webster, whose business was the cutting and selling of ice; that they were not filled with ice during the winter of 1874–5; that there may have been a few cakes of ice in them remaining over from the previous winter's crop; that the ice crop for the winter of 1874–5 failed, because there was no water in the pond adjoining the ice-houses, and that this was the only reason why the ice-houses were not filled as usual; that there was no ice at all in any of the buildings after April 1875; that the ice-houses were not used for anything after the ice was out, and that wagons and carriages were stored in the sheds.

The defendant contended that these facts showed that the premises were not " used for the storage of ice," as stated in the policy, and that the policy was therefore void, but the judge ruled otherwise, and that the words in the policy were merely descriptive of the buildings.

The defendant introduced evidence, against the plaintiffs' objection, tending to prove that Day applied to John H. Derby, of Salem, to procure insurance for him on these premises; that Derby, who was an insurance broker, thereupon wrote and forwarded an application to Jordan, Lovett & Company, of Boston, general insurance brokers, with a letter requesting them to procure insurance; that Jordan, Lovett & Company thereupon wrote and signed an application, which they sent by one of their clerks to Henry N. Baker, the Boston agent of the defendant

company; that Baker, on receiving this application, made inquiry of the clerk in regard to the risk and the occupancy of the buildings, and "bound" the risk for ten days, that the party might furnish information as to those particulars, in order to enable him to decide whether to issue a policy for the proposed term; that, in a few days, on July 9, the same clerk again called on Baker and told him there were no exposures of the buildings and that they were then full of ice; and that on the same day Baker accepted the risk and wrote the policy declared on, made it valid by his counter-signature, and delivered it to the clerk; and it was subsequently sent to Derby, who delivered it to Day.

There was no evidence that Day had any personal knowledge of any of these proceedings; and Derby, called as a witness by the defendant, testified, on cross-examination, that Day never told him there was any ice in the buildings; that he, Derby, had passed by the buildings and had seen them, but had made no examination of them or their contents; and that he knew that, at that season of the year, they would not be likely to have much ice in them; that he had never told anybody anything inconsistent with this, and that he had had no communication or dealing with Jordan, Lovett & Company concerning this risk, except to send them the application and letter.

The judge ruled that even if the clerk of Jordan, Lovett & Company made the verbal false statement that the buildings were full of ice to Baker, and if the statement was material, and if Baker wrote and issued the policy relying upon this false statement, it would not avoid the policy; and directed the jury to return a verdict for the plaintiffs. If either ruling was wrong, the verdict was to be set aside and a new trial granted; otherwise, judgment to be entered on the verdict.

*A. S. Wheeler & E. W. Hutchins*, for the defendant. 1. Dolliver being a creditor of Day, his certificate was not a compliance with the policy. The production of a proper certificate is a condition precedent to the plaintiffs' right to recover. *Johnson* v. *Phœnix Ins. Co.* 112 Mass. 49. The condition is a usual one in fire policies, and was in use a century ago, with this difference, that the words "as a creditor" did not formerly appear. *Oldman* v. *Bewicke*, 2 H. Bl. 577, note. These words have been

added in late years to make it plain beyond all question that the underwriter should be furnished with the certificate of one who was not a creditor, and could neither make nor lose, directly nor indirectly, by the determination of the rights and obligations of the parties in respect to the loss, but who should stand indifferent between them.  *Wright* v. *Hartford Ins. Co.* 36 Wis. 522. In the case at bar, Day did not become bankrupt until after the fire.   To what extent he was affected by the loss by this fire does not appear, nor is it material.

2. The policy describes the buildings insured as "used for the storage of ice."   In fact there was no ice in the buildings at the date of the policy, nor had there been for months previously, and no ice was put into the buildings up to the time of the ᵤre. The description of the risk in the policy is a warranty that the risk is as described.   *Wood* v. *Hartford Ins. Co.* 13 Conn. 533. *Goddard* v. *Monitor Ins. Co.* 108 Mass. 56.   *Wall* v. *East River Ins. Co.* 3 Seld. 370.   *Stout* v. *City Ins. Co.* 12 Iowa, 371.   *Chase* v. *Hamilton Ins. Co.* 20 N. Y. 52.   *Quin* v. *National Assur. Co.* Jones & Carey, 316.   *Parmelee* v. *Hoffman Ins. Co.* 54 N. Y. 193. *Fowler* v. *Ætna Ins. Co.* 6 Cowen, 673.   *Atherton* v. *Brown,* 14 Mass. 152.   *Higgins* v. *Livermore,* 14 Mass. 106.   *Alexander* v. *Germania Ins. Co.* 66 N. Y. 464.

3. The false representation made by the clerk avoided the policy.   The ruling of the judge who presided at the trial was undoubtedly based upon the St. of 1864, *c.* 196, which provides that "neither the application of the insured nor the by-laws of the company shall be considered as a warranty or a part of the contract, except so far as they are incorporated in full into the policy, and so appear on its face."   But the statement or representation in this case was not a part of the contract, but was preliminary to it, and therefore was not within the statute.   "Representations of facts existing at the time of the execution of the policy need not be inserted in it; for they are not necessary parts of it, but, as is sometimes said, collateral to it.   They are its foundation; and if the foundation does not exist, the superstructure does not arise.   Falsehood in such representations is not shown to vary or add to the contract, or to terminate a contract which has once been made; but to show that no contract has ever existed."   *Kimball* v. *Ætna Ins. Co.*

9 Allen, 540, 542. In *Taylor* v. *Ætna Ins. Co.* 120 Mass. 254, the statements in the application were made warranties by the express terms of the policy, and the court said that "the parties have thus agreed to change their character (i. e. the statements in the written application) from representations which precede, to stipulations which form part of the contract." The decision of that case is in no respect in conflict with the contention of the defendant in the case at bar. `

It makes no difference that the false representation was not made by the insured himself, but by the broker's clerk. By accepting the policy, the insured adopted the clerk as his agent, and the representation of the clerk, as if made by himself personally. *Draper* v. *Charter Oak Ins. Co.* 2 Allen, 569. *Kibbe* v. *Hamilton Ins. Co.* 11 Gray, 163. *Carpenter* v. *American Ins. Co.* 1 Story, 57. *Sawyer* v. *Coasters' Ins. Co.* 6 Gray, 221. The policy, too, provides that "any person other than the assured, who may have procured this insurance, shall be deemed to be the agent of the insured named in this policy."

*S. B. Ives, Jr. & L. S. Tuckerman*, for the plaintiffs, were not called upon.

SOULE, J. When a policy of insurance against fire provides that a loss under it shall not be payable till the assured produces the certificate of a magistrate to certain required facts, the production of such certificate is a condition precedent to the right to sue, unless the insurer has prevented or waived such production. *Johnson* v. *Phœnix Ins. Co.* 112 Mass. 49. The policy in suit contains this provision, and a certificate of the required form and substance was furnished; but the defendant now contends that it did not satisfy the requirement of the policy that it be made by a magistrate not concerned in the loss as a creditor or otherwise, because the magistrate was a creditor of the assured when the loss occurred and when the certificate was made.

It is not contended that either the assured or the magistrate supposed that the certificate was defective, nor that either of them acted in bad faith in the matter. We are of opinion that the certificate meets the requirement of the policy. The phrase "not concerned in the loss as a creditor" cannot be supposed to disqualify every magistrate who may chance to be a creditor,

even to a small amount, of the assured. The purpose of the requirement is to obtain the statement of a reputable person who has no personal interest in the policy which may tempt him to state what is not true. Such temptation would not exist when he was an unsecured creditor of a solvent assured; and the phrase on which the defendant relies is to be interpreted as requiring the certificate of a magistrate who is not concerned in the loss by reason of having an interest in the property insured, or in the policy, as security for an obligation to him. The certificate was therefore sufficient.

The statement in the policy, that the buildings were used for the storage of ice, was not a warranty that ice was there stored when the policy was written. The policy was written in mid summer, at a time when it would naturally be expected that a large part at least of the ice crop of the previous year had been exhausted. The fact that ice is produced by natural causes only in the winter season, so that the houses used for storing it will ordinarily be empty for a part of the year, indicates that the words in the policy were not intended and were not understood as warranting that ice was actually stored in the buildings at the moment of issuing the policy, but as descriptive of the business ordinarily done in them. In this sense they were operative as a part of the policy, because they prevented any liability of the defendant for loss, in case the buildings should be used during the term of the policy for a business more hazardous than that of storing ice. The case is unlike that of *Goddard* v. *Monitor Ins. Co.* 108 Mass. 56, in which it was held that a policy insuring a building as a machine-shop, as represented by one applying for the insurance, when in fact the building was occupied as an organ factory, on which the risk was greater, was void, because the minds of the parties never met. There existed in that case a state of facts entirely inconsistent with that which was represented to exist, and which, if known, would have made it manifest that the building was not a machine-shop in any sense, and was a shop used for a different and more dangerous purpose. In the cases relied on by the defendant, the point was that the state of things represented as existing, or warranted to exist, did not exist. In the case at bar, the question arises on the proper interpretation of the language

used, there being no doubt that, if the state of things called for by the language used did not exist, the policy was void. We are of opinion that the language, properly interpreted, described the existing state of things with accuracy, and that the policy took effect.

The representation by the clerk of the insurance broker to the agent of the defendant, that the buildings were full of ice, though false, did not vitiate the policy. The broker's clerk was not in any sense the agent of the assured, and was not the person who procured the policy. The application for the policy having been made in writing to the defendant, it had no right to rely on any verbal representations or statements made by a messenger sent by the broker to its agent, nor to assume that such statements or representations were made with the knowledge or consent of the assured. In the cases relied on by the defendant, on this branch of the case, the false representations were in writing, and referred to in the policy as representations on which the policy was based, and on the truth of which its validity depended. The assured, by accepting the policies containing those provisions, adopted the representations made, whatever they might be, and assumed the risk of their being false. *Kibbe* v. *Hamilton Ins. Co.* 11 Gray, 163. *Draper* v. *Charter Oak Ins. Co.* 2 Allen, 569. In the case at bar, the assured assumed nothing which the policy did not show, beyond what was done by his authority or by his agent.

The result is that there must be

*Judgment on the verdict.*