THOMAS E. GREEN v. LIVERPOOL & LONDON & GLOBE
INSURANCE COMPANY, Appellants.

1. **Parol Contract for Additional Insurance.** An oral agreement for additional insurance retains all conditions of the policy which is added to, except as changed by the verbal contract; and that, whether the original policy is valid or not.

**Construction of "While Contained."** If property be destroyed in one place which is insured "while" contained in another, no action lies, though it was in its "ordinary, necessary, and convenient use," when burned.

*Appeal from Cedar Rapids Superior Court.*—HON. JOHN
T. STONEMAN, Judge.

FRIDAY, OCTOBER 5, 1894.

ACTION at law on a contract for insurance. The cause was tried without a jury, and the court found the following facts and conclusions: "(1) That on the seventh day of November, 1891, the parties orally negotiated a contract of insurance, by the terms of which, in consideration of thirty dollars, then paid by the plaintiff to the defendant, the defendant promised and agreed to insure the plaintiff against damage or loss by fire, to an amount not exceeding two thousand, five hundred dollars, to plaintiff's household furniture, useful and ornamental, beds and bedding, linen, family wearing apparel, printed books and music, silver plate and plated ware, pictures, paintings, engravings, and mirrors and their frames, piano-forte or organ, stool and cover, sewing machine, fuel and family stores, watches and jewelry in use, and all other family goods not otherwise named, including pamphlets, magazines, sermons, and other writings, at not exceeding actual value, for the term of three years from November 7,

1891, at noon, to the seventh day of November, 1894, at noon, and plaintiff paid to defendant the sum of thirty dollars, which the defendant received in full consideration and compensation for said insurance, which defendant still retains. (2) That at the time of negotiating said contract the plaintiff was a minister of the gospel, and rector of Grace Church, in Cedar Rapids, Iowa, and resided at No. 133 A avenue, in said city, said residence being a few feet distant from said Grace Church. (3) That the property described, being Schedule A of plaintiff's petition, was, as to each article, covered by said contract of insurance with defendant, and each article was at the date of loss of the value set out in said schedule, aggregating in value seven hundred and twenty-seven dollars. (4) That said property so described was by the plaintiff, in the ordinary, usual, and necessary use of the same at the time it was destroyed by fire, kept by plaintiff in said chapel of Grace Church for its ordinary, necessary, and convenient use as rector of said church. (5) That on January 24, 1892, while said property was so kept in said chapel of said church, said chapel took fire, and from said fire in said chapel all of said property was thereby destroyed, of the value of seven hundred and and twenty-seven dollars. (6) That afterward, February 15, 1892, plaintiff served on defendant an affidavit showing said loss, of which Schedule A of the petition is a copy, and demanded of defendant payment of said loss, which defendant refused to make, and still refuses. (7) That at the time of said verbal negotiations for insurance it was understood between the plaintiff and the defendant that a written policy of insurance was to be made out by defendant and delivered to the plaintiff, and the same was so executed by the agent of defendant on the seventh day of November, 1891, and mailed at Cedar Rapids to the plaintiff the same night, which is Exhibit B. of plaintiff's petition, which the plaintiff

received before loss, and has since retained, without objection, up to date of loss, and still holds said policy. (8) Prior to the execution of policy, said Exhibit B, the plaintiff held a policy issued by said defendant, which is Exhibit No. 1 of the evidence. (9) That during all the times mentioned in plaintiff's petition the defendant was an insurance corporation for pecuniary profit, organized under the laws of Great Britain as a stock insurance company, and doing business as such within the state of Iowa, under license issued by the auditor of Iowa, said permit being Exhibit No. 5 of the evidence, doing business in the state of Iowa as a cash stock insurance company, and not as a mutual insurance company. (10) From the foregoing facts, I find as a conclusion of law that said written policy, Exhibit B of plaintiff's petition was issued in violation of the law of the state of Iowa, and is therefore void, for the reason that said policy does not set forth whether the defendant is a mutual or stock company, as required by law. That plaintiff is entitled to recover on the oral agreement. Plaintiff is entitled to judgment in the sum of seven hundred and twenty-seven dollars, with interest on said amount at the rate of six per cent per annum from February 15, 1892, and costs. John T. Stoneman, Judge." From the judgment, the defendant appealed.—*Reversed.*

*Mills & Keeler* for appellant.

*Chas. A. Clark* for appellee.

GRANGER, C. J.—As to the facts of the case, there is no substantial dispute. In January, 1889, the defendant company issued to the plaintiff a policy on the property specified in the first finding of fact by the court, with slight exceptions, among which is the item of "printed books." The aggregate amount of the policy was two thousand dollars, and it was specific

in this: that five hundred dollars of the amount was on a "library of books, pamphlets, magazines, sermons, and other writings," and the remaining one thousand, five hundred dollars on other items. November 7, 1891, the plaintiff applied to the agent of the company at Cedar Rapids, Iowa, for some additional insurance, saying he had been buying a number of new books, among other things, which he wanted insured, and he asked to have the amount of his insurance increased five hundred dollars. At the suggestion of the agent it was agreed that the former policy should be canceled, and a new one issued for the full amount of the insurance wanted, namely, two thousand, five hundred dollars, and in "blanket form," instead of being specific. In pursuance of this agreement, the new policy issued, in form as agreed upon, and was sent to and retained by plaintiff till the loss in question occurred. These facts, with perhaps others, appear from the record, and are proper to be considered with those found by the court in passing upon the assignments of error argued.

It will be remembered that this action is upon the oral contract for insurance, and not upon the policy. The property for which recovery is sought was burned in Grace chapel. Both of the policies referred to limited the liability of the company to loss for the property described "while contained in the two-story brick and frame dwelling house, with a shingle roof, situated on No. 133 A avenue, Cedar Rapids, Iowa." Because of this limitation there could be no recovery on the policy, for the building described was not Grace chapel, but separate, and some feet from it. To justify a recovery on the oral contract for insurance, it is averred in the petition that the policy is void, for the reason that it "does not set forth whether the company is a mutual or stock company, as required by law." It is true that neither of the policies conformed to the provisions of Code, section 1140, to show whether the company

issuing the policy was a mutual or stock company, and much attention is given in argument to the propositions whether or not the section is applicable to foreign insurance companies, and, if it is, whether the omission renders the policy void so as to justify an action on the oral agreement. We do not find it necessary to determine either of these questions, for if it be conceded that the action on the oral contract may be maintained, the undisputed facts are against plaintiff's right of recovery. The contract, whatever may be its terms, was made on the seventh day of November, 1891, and that is the date of the last policy. The policy, though void as such, as an instrument of writing contains the terms and conditions upon which the insurance was obtained. When plaintiff went to the agent for additional insurance, it was to be additional to what he then held; and it is a fact not to be questioned that the first policy then contained the understanding of the parties as to the terms of insurance. It had been delivered to plaintiff, accepted and retained by him as embodying the contract or understanding. On the seventh day of November, 1891, he simply asked for additional insurance, and it was agreed that another policy should issue, and the changes to be made were clearly understood. Both parties then knew the conditions of the policy as to the location of property insured, and no change in that respect was in any way suggested or considered. It was then clearly understood that a policy, with the terms as changed, was to issue, and it did issue, and was accepted. Had the policy shown on its face that it was a "cash stock company," it would have constituted the contract of the parties. And why? Because it contained the terms agreed upon by the parties. The terms expressed in the policy are just as clearly those agreed upon by the parties as if the instrument had shown that it was a stock company. There is no pretense in the record

of any other understanding than as expressed in the policy.

There is no finding by the superior court that the oral contract was in any way different from the policy, and, if the oral agreement contained the same limitation as to the location of the property, the liability for loss would have been the same as if the policy had been valid. The case of *Barre v. Insurance Company*, 76 Iowa, 609, 41 N. W. Rep. 373, is quite in point. In that case there was a breach of a contract to issue a policy. A loss occurred, and an action was brought on the agreement to issue one. It is there held that the parties were bound by the terms the policy would have contained had it issued. Under plaintiff's contention in this case, that the policy is void, it is as if none had issued; and there is not a word of testimony in this record, outside of the policy itself, except of an agreement to issue a policy of insurance. The right of action upon the oral promise is because of a failure to issue a valid policy. The terms of the oral agreement are the same as if the policy had been valid. The minds of the parties met on the terms and conditions as expressed in the policy. The *Barre* case goes even further, and says: "The law will presume that the minds of the contracting parties met upon a contract containing the terms and conditions of the policy usually issued by defendant covering the risks." See *Smith v. Insurance Company*, 64 Iowa, 716, 21 N. W. Rep. 145. In this case the parties actually put in writing the terms and conditions of their agreement. The writing, when unquestioned, as in this case, as to its containing the terms as agreed upon, is conclusive upon the question. Appellee urges that the restriction as to the place is a mere matter of description, and that the company is liable, notwithstanding, if the property is destroyed at another place "in its ordinary, necessary, and convenient use;" and the case of

*Longueville v. Assurance Co.*, 51 Iowa, 553, 2 N. W. Rep. 394, with other like cases, are cited in support of the rule. In the *Longueville* case, certain wearing apparel and household goods were insured, "all contained in a two-story frame dwelling." Some of the wearing apparel was worn away and burned while in such use; and the words, "contained in * * * a frame dwelling," were held to be words of description, and that the parties used them as indicating the place of deposit when not in use. This policy is different, and limits the liability of the company for loss on the property *"while* contained in the two-story brick and frame dwelling house," etc. This contract is widely different from those in the cases cited. The evidence shows that the property was kept sometimes in the chapel and sometimes in the house, and parts of it used in both places; and if we assume that the parties, when making the contract, knew of this, we have additional reason for limiting the liability to losses while in the house. It is sufficient to say that the liability is thus limited, and the courts have no right to extend it. We think, under the undisputed facts of the case, there should have been a judgment for defendant, and that entered for the plaintiff is REVERSED.