[Sac. No. 430.   Department Two.—December 8, 1898.]

J. M. SLINKARD, Jr., Respondent, v. MANCHESTER FIRE
ASSURANCE COMPANY, Appellant.

FIRE INSURANCE—COMBINED HARVESTER—INSURANCE LIMITED "WHILE IN
USE"—STORAGE NOT INCLUDED.—A policy insuring the owner of a
combined harvester against loss by fire "while in use" in the
county, for a period of three months, does not cover a loss oc-
curring during that period, while the harvester was not in use
for harvesting purposes, but was dismantled and stored away
for safe keeping in a shed on the ranch of the owner, after the
harvest was over.

ID.—DIMINUTION OF RISK—EVIDENCE.—The stipulation of the policy lim-
iting the risk to the use of the harvester cannot be avoided by
showing that the risk to the machine by fire was less when
stored in the shed than when in use in the field, and evidence
to that effect is inadmissible.

ID.—CONSTRUCTION OF CODE—"ALTERATION OF USE OR CONDITION."—Sec-
tion 2754 of the Civil Code, providing that "an alteration in the
use or condition of a thing insured from that to which it is
limited by the policy, which does not increase the risk, does
not affect a contract of insurance," has reference to policies
which do not in terms stipulate against the use for certain pur-
poses, or do not restrict the use to certain definite purposes,
and does not apply to policies containing such express stipula-
tion or restriction.

ID.—RIGHT OF INSURER TO SELECT RISK.—An insurer is at liberty to select
the character of the risk he will assume, and he is not liable
except upon proof that the loss occurred within the terms of
the policy.

APPEAL from a judgment of the Superior Court of Tulare
County and from an order denying a new trial.   Wheaton A.
Gray, Judge.

The facts are stated in the opinion.

Van Ness & Redman, for Appellant.

An insurer is not liable for a loss not covered by the risk as-

sumed in the policy. (*Benicia Agricultural Works v. Germania Ins. Co.,* 97 Cal. 468; *Mawhinney v. Southern Ins. Co.,* 98 Cal. 184; *Langworthy v. Insurance Co.,* 85 N. Y. 632; *Minneapolis etc. Co. v. Insurance Co.,* 57 Minn. 35; 47 Am. St. Rep. 572; *Wall v. Insurance Co.,* 7 N. Y. 370; *Houghton v. Insurance Co.,* 8 Met. 114; *English v. Insurance Co.,* 55 Mich. 273; 54 Am. Rep. 377; *Bryce v. Insurance Co.,* 55 N. Y. 240; 14 Am. Rep. 249; *Eddy St. Iron Foundry v. Insurance Co.,* 1 Cliff. 300; *Boynton v. Insurance Co.,* 16 Barb. 254; *Insurance Co. v. Updegraff,* 40 Pa. St. 311.)    Section 2754 of the Civil Code is inapplicable to this case.

Hannah & Miller, and Charles G. Lamberson, for Respondent.

In this case there is no limitation to a specific use; and the general limitation "while in use" comprehends any use, or occupancy of the machine. (Webster's Dictionary, tit. "Use"; *Astor v. Merritt,* 111 U. S. 202; *Snow v. Columbian Ins. Co.,* 48 N. Y. 627; 8 Am. Rep. 578; Civ. Code, sec. 2754.) A change from use to disuse does not vitate a policy which permits of a change in use, if the risk is not materially increased. (*Cannell v. Phoenix Ins. Co.,* 59 Me. 582.)

CHIPMAN, C.—Action on insurance policy for loss of a combined harvester by fire. Plaintiff had judgment, from which and from an order denying motion for new trial defendant appeals.

Defendant issued its policy to plaintiff to cover a period of three months from June 25, 1896, at noon, "against all direct loss or damage by fire, except as hereinafter provided . . . . while located and contained as described herein, and not elsewhere, to wit, *twelve hundred dollars on combined harvester, Haines-Houser, makers, while in use in Tulare County, Calif.,*" et cetera.

The court found that at the time the policy was issued the harvester "was being actually used in the field by plaintiff for the purpose of harvesting grain upon his ranch in Tulare county, and continued to be so used by him until the twenty-fifth day of July, 1896, when said harvester was placed in a shed upon the said ranch of plaintiff; . . . . that the placing of said harvester in such shed was the usual manner in which such ma-

chinery is taken care of and provided in such neighborhood, and was a proper and careful manner for the safekeeping of such property." The court found that the risk was not thereby increased, but materially decreased, and was less liable to loss by fire in said shed than when in use in the field. On September 26, 1896, while in said shed, the harvester was destroyed by fire without plaintiff's fault.

The italicised words of the policy as shown above were in writing upon the face of the policy; and except the signature, the rest of the policy was in print.

The liability of defendant depends upon two questions: 1. Was the harvester, at the time of the loss, "in use" within the meaning of the policy? and 2. Is section 2754 of the Civil Code applicable to such case as this?

1. Without reference to the section of the Civil Code referred to, we think the words "while in use" were intended to be employed and have the effect to limit the liability of defendant to loss by fire of the harvester while being used for harvesting purposes, and do not cover the loss as it occurred. The liability would probably attach in an interval of disuse in the field—as at night, or the noon hour, or while undergoing temporary repairs where being used; for it would be a narrow, and we think unwarranted, construction to hold that the policy covered those periods only while the machine was actually engaged in cutting grain and did not include temporary stoppages. But we think it would do violence to the language used, as well as to the manifest intention of the parties, to hold that the policy covered a risk after the harvest was over and plaintiff had ceased using it and the machine was dismantled and stored away in a building. It had then ceased to be used in the sense contemplated. A policy insured against loss by fire a threshing machine engine and separator "while not in use." The outfit had been used, but was hauled to another place and was left standing near a farm house preparatory to its intended use a few days later, and while standing there was destroyed by fire. It was held that the machines were "not in use" within the meaning of the policy. (*Minneapolis etc. Co. v. Insurance Co.*, 57 Minn. 35; 47 Am. St. Rep. 572.) This is a case the converse of the one we have here, but it shows, and we think properly, that when we speak of

'a machine "in use" we do not mean a machine "not in use." The language of the policies in *Benicia etc. Works v. Germania Ins. Co.*, 97 Cal. 468, and *Mawhinney v. Southern Ins. Co.*, 98 Cal. 184, was not the same as in the present case, but the principle there decided governs here. Among other things, it was said in the latter of these cases, "An insurer is not liable, except upon proof that the loss has occurred within the terms of the policy, and when making the policy he is at liberty to select the character of the risk he will assume. If the terms of the risk are distinct and without ambiguity, the assured cannot complain if the risk assumed does not cover the loss. . . . . Whatever may have been the motives for limiting the extent of the risk, he [the insurer] cannot be made liable for a loss that was not covered by the risk assumed in the policy." It has been similarly held in many adjudicated cases. (Wood's Fire Insurance, sec. 47.)

Respondent contends that the language "while in use in Tulare county" was not intended to mean any particular or special use, but was intended to mean only the general use made of such property in the county and while it remained in such county. We are cited to *Astor v. Merritt*, 111 U. S. 202, and *Snow v. Columbian Ins. Co.*, 48 N. Y. 624; 8 Am. Rep. 578.

We are unable to see that these cases warrant our holding the intention of the parties in the policy before us to be as broad as contended for by respondent. If he had intended to have a general risk covered for the three months, why were the terms "in use" written into the policy? If such had been the intent, the expression would have been "while in Tulare county," not "while *in use* in Tulare county." We cannot speculate as to whether the risk was greater or less while in actual use than while stored in the shed, to ascertain the true meaning of the terms used, for, whether greater or less, we are held to the terms in fact used. When insured the machine was in the harvest field "in use" to harvest grain; and it seems to us that this was the use, and the only use, meant by the parties.

In *Langworthy v. Insurance Co.*, 85 N. Y. 632, the policy read: "Frame shingle roof hop-house, *while drying hops*" from August 15th to October 15th. The hop-house was destroyed September 30th, after the plaintiff had ceased drying hops. The court said: "The defendant did not undertake to insure the hop-house against fire generally during the time specified, but during

the time specified only 'while drying hops.' . . . . If this had been intended as an absolute general insurance for the full term of sixty days, the words 'while drying hops' were purposeless, having no signification." And so it seems to us in the case here the words "in use" would be purposeless if we were to hold as contended by respondent, for we do not think a machine can be said to be *in use* when it is stored away in a shed after the harvest is over and is in fact in *disuse*.

2. Respondent claims that while it may be said that the use to which the machine was limited by the terms of the policy was the special use of harvesting grain, respondent has, by his pleading and by the evidence, shown that he is fairly within the provisions of sections 2611, 2753, and 2754 of the Civil Code.

Section 2611 reads: "A policy may declare that a violation of specific provisions thereof shall avoid it, otherwise a breach of an immaterial provision does not avoid the policy." Section 2754 reads: "An alteration in the use or condition of a thing insured from that to which it is limited by the policy, which does not increase the risk, does not affect a contract of insurance." Section 2753 gives the insurer the right to rescind in the case mentioned in 2754, under circumstances stated. It is claimed that these sections "abrogate the rule which had formerly obtained, that any change in the use or condition of a thing insured from that limited in the policy avoided the insurance."

It is not to be supposed that the legislature intended by section 2611 to give the insurer the right to insert a condition in the policy which, if violated, should avoid it, and by section 2754 take away that right. Respondent's construction would abrogate the warranties specially declared to exist in certain policies as shown by sections 2603 *et seq.*; and would practically take away from the parties the right of contract altogether. We think that the terms "alteration in the use or condition" has reference to policies silent upon the subject, in which case the general rule is that the contract is not thereby avoided unless the change of use or condition materially increases the risk. But where the policy in terms stipulates against the use for certain purposes, or restricts the use to certain definite purposes, we do not think section 2754 was intended to apply; nor do we think it introduces a rule under which the insured could, by proof that there was less hazard in

the changed use, enforce a policy which stipulated against such changed use. When the insurer has thus stipulated, the violation of the agreement is not to be tested by the effect upon the risk, for it makes no difference whether the risk is increased or not. The stipulation has made any change of use a material part of the contract. The cases in 97 and 98 California *supra*, while not referring to section 2754, could not have been decided in ignorance or disregard of its provisions. The case in 97 California, we think was decided with a clearly implied reference to section 2754, and that section was cited by appellant in its brief. The court said: "The appellant took exceptions to the rulings of the court excluding certain offered evidence by which appellant sought to show that the risk or hazard was not increased by the fact that the machine was not employed in the fields, or in transit, at the time of the fire; but those objections and that testimony were immaterial under the view which we have taken of the contract itself." And so in 98 California it was distinctly held that an insurer is at liberty to select the character of the risk he will assume, and he is not liable except upon proof that the loss occurred within the terms of the policy. The dissenting opinions clearly show that upon the point now raised there was no disagreement in the court. In *McKenzie v. Scottish etc. Ins. Co.*, 112 Cal. 548, it was said: "Parties may contract as they please. When a condition precedent is adopted by them in their contract the courts will not inquire as to its wisdom or folly, but must exact its strict, or at least its substantial observance." We do not think section 2754, *supra*, was intended to apply to such a case as this, nor that the stipulations in the policy could be avoided by showing that the risk to the machine from fire was less in the shed than in the field while in use. It was error to admit evidence under this section, over defendants' objection, upon that question of fact. (*Benicia etc. Works v. Germania Ins. Co., supra.*)

The judgment and order should be reversed.

Britt, C. and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are reversed.

                              Temple, J., McFarland, J., Henshaw, J.