[Civ. No. 83. First Appellate District.—January 20, 1906.]

FIREMAN'S FUND INSURANCE COMPANY, Appellant, v. AACHEN & MUNICH FIRE INSURANCE COMPANY, Respondent.

FIRE INSURANCE—REINSURANCE—MISDESCRIBED LOCATION OF WHEAT—RATE AND HAZARD AFFECTED—REINSURER NOT LIABLE.—Although the liability of reinsurer of wheat described from loss by fire does not exist if there is no legal liability of the original insurer to the person insured against such loss, yet, whether or not the reinsurer is liable to the original insurer, in any event, depends upon the terms of the contract of reinsurance; and if the location of the insured wheat is misdescribed therein, as located in a specified "warehouse," in which the rate and hazard were less than in

an "elevator" located elsewhere, in which the wheat was in fact situated, the reinsurer is not liable on the contract of reinsurance, notwithstanding the liability of the original insurer to the insured person.

ID.—LATENT AMBIGUITY—PAROL EVIDENCE—DISTINCTIVE NAMES—REFERENCE TO RATE-BOOKS.—Where it was claimed that the term "warehouse" was applicable to the "elevator," the case was one of latent ambiguity to be explained by parol testimony; and where the evidence showed, and the court found, that in the insurance rate-books the buildings were known by the distinctive names of "warehouse" and "elevator," and on the insurance maps the one was called "flour warehouse" and the other called "elevator," and that in the community one was sometimes called the "flour warehouse" or "river warehouse," and the other the "elevator warehouse," the policy must be construed as in effect providing that the wheat, which was the primary subject of insurance, was insured only while contained in the "warehouse," as designated in the rate-books.

ID.—SUBJECTION OF POLICY TO RISKS—SUBJECT MATTER OF POLICY.—A clause in the policy of reinsurance stating that "this policy is subject to the same risks, valuation, condition and adjustments as are or may be taken by the reinsured," etc., does not show that the subject matter of the policy was merely the risk assumed by the original insurer and not the specific property described in the policy.

ID.—APPLICATION FOR POLICY—MISREPRESENTATION AS TO MATERIAL MATTER.—The use of the word "warehouse" in the application for the policy of reinsurance was intended to mean by plaintiff, and was understood to mean by defendant, the building designated as such on the rate-books and maps, and not the building known to them as the "elevator," where the rate and hazard were greater, and the use of the word "warehouse" to describe wheat situated in the "elevator" was a misrepresentation as to a material matter, which avoided the policy.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Page, McCutchen, Harding & Knight, and Page, McCutchen & Knight, for Appellant.

W. S. Goodfellow, and Van Ness & Redman, for Respondent.

HALL, J.—There are two appeals in this case, one from the judgment in favor of defendant, and one from the order denying plaintiff's motion for a new trial. The two appeals come before us on one record.

The action was brought to recover on a policy of reinsurance issued by the defendant to plaintiff. From the record in the case it appears that plaintiff and defendant were engaged in the business of fire insurance in the states of California, Oregon, and elsewhere at all the times mentioned in the complaint. The court found: "That at all of said times there were situated upon the premises of the Salem Flour Mills Company, at Salem, in the county of Marion, state of Oregon, divers separate buildings, and the same were known and designated by distinctive names. That plaintiff and defendant, and certain other fire insurance companies, at all of said times, had and used certain rate-books and maps in the conduct of their business, and the same were used by plaintiff and defendant in the negotiations for the policy of reinsurance sued on in this action. That in the said rate-book one of the said several buildings above referred to was named, designated and described as 'Warehouse,' and another thereof was named, designated and described as 'Elevator.' That upon the said maps the said several buildings were delineated and the said building above referred to and described as 'Warehouse' was upon said maps marked 'Flour W. Ho. Wheat Storage 1st,' meaning 'Flour Warehouse. Wheat storage on first floor,' and the other of said buildings hereinabove referred to and described as 'Elevator' was on said maps marked 'Elevator.' That at all said times the said buildings were known to and designated and described by the plaintiff and defendant herein and said other fire insurance companies doing business in said states as the Salem Flouring Mills Company 'Warehouse' and the Salem Flouring Mills Company 'Elevator,' respectively. That the said two buildings were at a distance of about two hundred (200) feet apart. That the rate of premium charged by said companies for insurance upon the contents of the said elevator was greater than the rate of premium upon the contents of said warehouse. That said rates were fixed and designated in said rate-books, and the same were uniformly charged by the plaintiff and defendant and said other fire insurance companies in the states of

California and Oregon. That both of said buildings were generally known and designated in Salem, Oregon, and thereabouts, as 'Warehouses,' said building first hereinabove referred to sometimes being called the 'Flour Warehouse,' and sometimes the 'River Warehouse'; but among insurance men in said community said building designated in said books and maps as 'Elevator' was known as the 'Elevator Warehouse.' " There was ample evidence to support this finding.

Plaintiff had an agent at Halsey, in the state of Oregon, with power to issue policies of fire insurance. This agent, whose name is M. V. Koontz, owned some 14,000 bushels of wheat stored in the said "Elevator," and as agent of plaintiff issued to himself a policy of fire insurance, numbered W48,505, against loss or damage by fire to an amount not exceeding $7,000 "on fourteen thousand bushels of wheat, marked —— while in Salem Flouring Mills Co. warehouse or in sheds or on platform thereto attached, at Salem, county of Marion, state of Oregon," for the term of three months, expiring at noon October 15, 1899. The issuance of this policy was reported by Koontz to the plaintiff at San Francisco, and plaintiff approved the same, but in so doing and until after the fire occurred understood and believed the "warehouse" mentioned in the policy to be the building designated in said rate-books and maps as "Warehouse." The rate of premium payable on said policy was the rate fixed for said building, and not the higher rate fixed for said "elevator." Plaintiff (except by its agent Koontz) never saw the policy until after the fire.

After the issuance of said policy by plaintiff it applied to defendant, in San Francisco, California, for reinsurance. This application was made by a clerk, whose duty it was to procure reinsurance. At the time of this application the defendant and plaintiff referred to the rate-book and maps before mentioned, and the clerk of plaintiff pointed out and designated the building delineated thereon as the "Warehouse" aforesaid as the building in which the wheat was situated. The original policy was not exhibited to defendant. Defendant thereupon gave to plaintiff a temporary covering note "for an amount not exceeding $2,500 on wheat in Flour Whse situate S. S. Trade St. Salem, Oregon," and shortly thereafter issued to plaintiff the policy sued on in this action,

the pertinent parts of which are as follows: "The Aachen & Munich Fire Insurance Company of Aix La Chapelle, Germany. In consideration of the stipulation herein named and of sixteen dollars premium, does insure Fireman's Fund Insurance Company for the term of 3 months from the 15th day of July, A. D. 1899, at noon, against all direct loss or damage by fire, except as hereinafter provided, to an amount not exceeding two thousand dollars, to the following described property while located and contained as described herein, and not elsewhere, to wit: $2,000.00 on their interest as insurers, under their policy No. W48,505, issued to M. V. Koontz, covering $7,000.00, viz.: $7,000.00 on 14,000 bushels of wheat while contained in warehouse of Salem Flouring Mills Co. at Salem, Marion county, Oregon. Property known and marked as bulk wheat. This policy is subject to the same risks, valuations, conditions and adjustments as or may be taken by the reinsured, and loss, if any thereunder, is payable pro rata with the reinsured, and at the same time and place." The rate of premium payable on this policy was based on the rate for the "warehouse," and not on the rate for the "elevator," and at the time of issuing the policy and until after the fire occurred both plaintiff and defendant believed and understood that the wheat was stored in the "warehouse" and not in the "elevator." The "elevator" was burned during the life of the policy and the wheat damaged. After the fire for the first time the officers of the plaintiff at San Francisco and the defendant learned that the wheat was in the "elevator" and not in the "warehouse." Plaintiff paid the loss to Koontz, but defendant refused to pay plaintiff under the policy of reinsurance, but offered to return the premium it had received.

Defendant takes the position, first, that under the facts plaintiff was not liable to Koontz, and its payment to Koontz was merely a voluntary payment, and therefore defendant is not liable on the policy of reinsurance; and, second, that even if it be that plaintiff was liable on its contract with Koontz, defendant's contract with plaintiff was to indemnify it against loss or damage to the wheat while contained in the "warehouse," and not elsewhere, and that the "warehouse" referred to in its contract is the building so designated in the rate-book and maps before mentioned, and therefore defendant is not liable to plaintiff. Plaintiff, on the other hand,

contends that plaintiff was liable to Koontz, and that by the contract of reinsurance defendant agreed to indemnify it against loss under the "risk" it had taken under its contract with Koontz.

The propositions contended for by appellant are raised by various objections to the admission of testimony tending to explain the meaning of the word "warehouse" in the policy of reinsurance, as well as by objections to the sufficiency of the evidence to sustain the findings, and of the findings to sustain the judgment. In determining these questions appellant takes the position that "there are but the two questions to be discussed: 1. Was the plaintiff bound under its policy to pay the loss incurred by Koontz? and 2. If it was so bound, can the defendant relieve itself from liability on the policy of reinsurance by reason of anything occurring between it and the plaintiff?" Under the view we take of this case, we do not think that it is important to determine whether or not plaintiff was liable to Koontz, and for the purposes of this opinion we may assume that plaintiff was liable to Koontz. While it is perfectly true that if plaintiff was not liable to Koontz, it suffered no legal loss, and defendant would not be liable to plaintiff, it does not necessarily follow that, where the first insurer is liable, the reinsurer is also liable. Whether or not the reinsurer is liable depends upon the terms of the contract of reinsurance.

Plaintiff insists that the subject matter of the reinsurance was the risk assumed by plaintiff under its policy with Koontz. and cites us to *Jackson* v. *St. Paul Fire etc. Ins. Co.*, 99 N. Y. 124, [1 N. E. 539], where it was held that the policy of reinsurance sued on in that case was an insurance against a "risk." In the case in 99 N. Y., [1 N. E.], the language of the policy, as set out in the report of the case, seems to be directed to the risk as contradistinguished from the property covered by the first policy. The language was: "The St. Paul do reinsure" to Paterson Company "against loss or damage by fire to the amount of $1,500 on their interest as insurers under their policy No. 582 issued to E. Sherwood." The report of the case then continues, saying: "Then follows, in the language of the application, a statement as to the amount and distribution of insurance and description of the property insured under that policy." In *Faneuil Hall Ins. Co.* v.

*Liverpool etc. Ins. Co.*, 153 Mass. 63, [26 N. E. 244], cited by appellant, the contract of reinsurance was plainly by the terms of the contract a reinsurance against numerous risks described in a schedule attached. In *Manufacturers' etc. Ins. Co.* v. *Western Assur. Co.*, 145 Mass. 419, [14 N. E. 632], the re-insurance was in terms "on its liability as insurers, etc."; and the question determined was that the first insurer could consent to an assignment of the interest of the first assured which does not materially affect the risk. In 1 May on Insurance, section 98, referring to reinsurance, it is said: "The subject matter of the insurance in each case is the same, but the interests are different. In the first case the owner's interest is that which is protected; in the latter it is the insurer's interest in the preservation of the property by reason of the fact that he is under obligation to pay for it in case of loss." In any event, the liability of a reinsurer, like that of a party to any other contract, must depend upon the terms of his contract.

By the contract sued on in this case defendant insured plaintiff "against all direct loss or damage by fire . . . to the following described property while located and contained as described herein, and not elsewhere." This language clearly indicates that the subject matter of the insurance was tangible property that could be located somewhere and contained in something. The language, "$2,000.00 on their interest as insurers, under their policy No. W48,505 issued to M. V. Koontz, covering $7,000.00, viz.: $7,000.00 on 14,000 bushels of wheat while contained in warehouse of Salem Flouring Mills Co. at Salem, Marion county, Oregon. Property known and marked bulk wheat"—clearly indicates that the property, the loss of which was insured against, was the wheat, and the whole contract shows that this was only covered while contained in the warehouse, and not elsewhere.

In this connection appellant urges that as the term "warehouse" was applicable to the elevator, as well as to the flour warehouse, the policy by its terms covered the wheat in either place, and that no parol testimony could be given to explain the meaning of the word. We regard this, however, as a case of latent ambiguity, which can be explained by parol testimony. (1 Greenleaf on Evidence, sec. 288; *Bryce* v. *Lorillard Ins. Co.*, 55 N. Y. 240, [14 Am. Rep. 249]; *Melcher*

v. *Ocean Ins. Co.*, 59 Me. 217; *Burr* v. *Broadway Ins. Co.*, 16 N. Y. 267; *Jenny Lind* v. *Bower*, 11 Cal. 194; *Auzerais* v. *Naglee*, 74 Cal. 60, [15 Pac. 371]; *Balfour* v. *Fresno etc. Co.*, 109 Cal. 221, [41 Pac. 876].) In *Melcher* v. *Ocean Ins. Co.*, 59 Me. 217, an insurance had been effected on a "charter" of a vessel. The vessel at the time was sailing under two charters, and it was held that parol testimony was admissible to show which charter was intended. We think that the policy sued on in effect provided that the wheat, which was the primary subject of the insurance, was insured only while contained in the "warehouse" as designated in the rate-books. As the wheat was not in such "warehouse," but was in the "elevator," a different building, where the hazard and rate were greater, the defendant is not liable on its contract of reinsurance. (*Green* v. *Liverpool etc. Ins. Co.*, 91 Iowa, 615, [60 N. W. 189]; *Benicia Agr. Works* v. *Germania Ins. Co.*, 97 Cal. 468, [32 Pac. 512]; *Mawhinney* v. *Southern Ins. Co.*, 98 Cal. 184, [32 Pac. 945]; *Slinkard* v. *Manchester etc. Ins. Co.*, 122 Cal. 595, [55 Pac. 417]; *Bryce* v. *Lorillard F. Ins. Co.*, 55 N. Y. 240, [14 Am. Rep. 249].)

We do not think the clause in the policy, "This policy is subject to the same risks, valuation, conditions and adjustments as or may be taken by the reinsured, etc.," aids the plaintiff. Under such a clause it is said in *Manufacturers' Ins. Co.* v. *Western Assur. Co.*, 145 Mass. 419, [14 N. E. 632]: "It did not authorize the plaintiff to charge the defendant by the assumption of a new risk of a different character, or to materially enlarge the existing one. But it covered whatever an insurance company, in accordance with the general usage of such companies in like cases, would do, in the proper performance of its duty, for the continuation of the same risk, having due regard to the rights and interests of both insurer and insured." The words "subject to the same risk," etc., cannot be made to defeat a vital and material requirement expressly stipulated in the contract such as that the subject of insurance shall be contained in a given building. The policy also expressly provided that it should be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof. Defendant, as a separate defense, pleaded this provision of the policy, and that plain-

tiff in procuring the reinsurance had misrepresented a material matter concerning the insurance and the subject thereof, to wit, the location of the wheat. The facts are set forth in detail. On applying for the reinsurance plaintiff presented a written application, wherein it asked for reinsurance "on their interest as insurers, under their policy No. W49,505, issued, to M. V. Koontz, covering $7,000.00. . . . $7,000.00 on 14,000 bushels of wheat while contained in 'Warehouse' of Salem Flouring Mill Co. at Salem, Oregon," etc.

As we have already seen, the clerk who applied for the reinsurance pointed to the "warehouse," as shown on the maps, as the building in which the wheat was stored; but in this connection it is urged by plaintiff that the clerk had no authority to make any representations, and that his action in this regard was not within the scope of his employment; citing *Dolliver* v. *St. Joseph Ins. Co.*, 131 Mass. 39, but see contra, *Arff* v. *Star Fire Ins. Co.*, 125 N. Y. 57, [21 Am. St. Rep. 721, 25 N. E. 1073]. But however this may be, it is perfectly clear that the word "Warehouse" in the written application was intended to mean by plaintiff. and was understood to mean by defendant, the building designated as such on the maps and rate-books before mentioned, and not the building known to them as "elevator," where the rate and hazard were greater. This application in effect represented that the wheat, which was the primary subject matter of the insurance, was in the "warehouse" as distinguished from the "elevator." This was a misrepresentation as to a material matter. (*Bryce* v. *Lorillard Ins. Co.*, 55 N. Y. 240, [14 Am. Rep. 249] ; *Harris* v. *Royal Canadian Ins. Co.*, 53 Iowa, 236, [5 N. W. 124] ; *Severance* v. *Continental Ins. Co.*, 5 Biss. 156, [Fed. Cas. No. 12,680] ; *Benicia Agr. Works* v. *Germania Ins. Co.*, 97 Cal. 468, [32 Pac. 512] ; *Slinkard* v. *Manchester etc. Ins. Co.*, 122 Cal. 595, [55 Pac. 417] ; *Columbia Ins. Co.* v. *Lawrence*, 10 Pet. 507.)

The judgment and order are affirmed.

Harrison, P. J., and Cooper, J., concurred.