The contention of the plaintiff that the statute of the state of Illinois providing that a divorce by default could only be set aside within three years is untenable. If the judgment was void by reason of want of jurisdiction, this statute referred to would not give it greater effect. I am therefore of the opinion that the decree of divorce against the plaintiff herein by her former husband, Albert S. Rennie, was void, and that there was no legal marriage between the parties to this action.

Findings passed upon. Submit decree.

(79 Misc. Rep. 150.)

HARBOR & SUBURBAN BLDG. & SAVINGS ASS'N v. EMPLOYERS' LIABILITY ASSUR. CORPORATION, LIMITED, OF LONDON, ENGLAND.

(Supreme Court, Trial Term, New York County.   January, 1913.)

1. INSURANCE (§§ 513, 514*)—INDEMNITY INSURANCE—ACTION ON POLICY—AMOUNT OF RECOVERY.

Where defendant issued a policy indemnifying an employer against loss from liability imposed on it for damages on account of bodily injuries to any one on the premises, and judgment was recovered against plaintiff in an action by it on the policy, it was entitled to recover expenses in defending the action for personal injuries, together with the amount paid by it on account of the judgment recovered.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1298; Dec. Dig. §§ 513, 514.*]

2. INSURANCE (§ 435*)—INDEMNITY INSURANCE—"REPAIRS."

Where, under a policy indemnifying plaintiff against liability for damages for bodily injuries suffered on the premises of the insured, and granting the insured the privilege of making such repairs as are necessary for the care of the premises, the roof of a building was destroyed by fire, the replacing of the same with a new one constituted "repairs," within the policy, so that the insurer was liable to the insured for injuries to a third person on the premises pending such repairs.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1144; Dec. Dig. § 435.*

For other definitions, see Words and Phrases, vol. 7, pp. 6096–6102; vol. 8, p. 7785.]

3. INSURANCE (§ 332¼, New, vol. 14 Key-No. Series)—INDEMNITY INSURANCE—BREACH OF WARRANTY.

Where insured, under an indemnity policy against liability for personal injuries to third persons, warranted that the premises were occupied as an apartment hotel, a temporary suspension of business, rendered necessary by a fire in the hotel, was not a breach of such warranty.

4. INSURANCE (§ 622*)—INDEMNITY INSURANCE—ACTION ON POLICY.

Where, under a policy indemnifying plaintiff against loss for personal injuries to third persons, requiring payment by insured on account of a loss to be made within 90 days before action was brought, the evidence showed that a check was drawn by insured in payment of a judgment against him on August 29, 1910, but was not paid until September 26, 1910, and an action was brought December 24, 1910, and there was no proof that the check was received in payment, and the policy provided that the loss must be paid in money, there was no payment until Sep-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tember 26th, and the action brought on December 24th was within the 90 days fixed by the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1544–1550; Dec. Dig. § 622.*]

Action by the Harbor & Suburban Building & Savings Association against the Employers' Liability Assurance Corporation, Limited, of London, England. Judgment for plaintiff.

Robert H. Grimes, of New York City, for plaintiff.

Bertrand L. Pettigrew, of New York City (Herbert C. Smyth, of New York City, of counsel), for defendant.

ERLANGER, J. The defendant issued to the plaintiff a policy indemnifying it against loss from the liability imposed by law upon the assured for damages on account of bodily injuries, including death resulting therefrom, accidentally suffered by any person or persons whomsoever, while within or upon the premises described in the schedule annexed to said policy or the premises or ways adjacent thereto.

On the 9th of September, 1907, a fire occurred on the premises in question, destroying the floor beams and flooring of the three upper floors and almost the entire roof.

While the damage to the building and contents from fire and water reached the aggregate sum of $43,440.50, none of the exterior walls of the building were injured, and in passing one would not notice that there had been a fire there at all. On September 23, 1907, the plaintiff entered into a contract with the John C. Gabler Company to—

"remove all burnt and charred roof beams, roof boards, damaged tins, etc., furnished and erect new roof beams where necessary; rebuild bulkheads over vent shaft over elevator and stairs and also build covering over coppered tanks; furnish and lay roof boarding and plaster cement roof; also furnish and erect three looped skylights as before; repair or replace with new where necessary all copper flashing; cover sides of boarding over tank with galvanized iron; do all necessary beam filling and remove all rubbish which belongs to the roof from the premises."

The work was to be completed within 10 days from the date of the contract, and the price agreed to be paid therefor was $2,157.

In laying the roof it was necessary to remove some loose brick and to replace them. The result of the work performed by the Gabler Company was in effect to construct a new and permanent roof in place of the one which the fire had destroyed.

[1] Pending the life of the said policy and on the 28th of September, 1907, one James F. Hughes, while passing along the sidewalk in front of said premises, received certain bodily injuries as the result of an accident caused by the falling of a brick, presumably from the roof. Thereafter the said Hughes brought an action against the plaintiff and the Gabler Company to recover damages for the injuries sustained by him, and after a trial judgment was entered against the plaintiff and its codefendant for the sum of $40,164.82, which judgment was affirmed on appeal. On September 26, 1910, the plaintiff paid on account of said judgment the sum of $3,767.55, and in addition incurred an expense of $1,659.56 in defending said action. Subse-

quently this action was brought to recover from the defendant the total of said two sums. At the close of the trial the defendant moved to dismiss the complaint, upon the grounds (a) that the risk was not covered by the policy, and that condition C thereof was violated; (b) that the Schedule of Warranties 4 was violated, in that the premises were not occupied as an apartment hotel, but, on the contrary, were being used for the purpose of alteration, and were in the custody of the contractor; and (c) that the payments made by the plaintiffs on account of the loss were made more than 90 days before this action was commenced. No other question was raised before me by the defendant, except those mentioned, and each will be considered in the order stated.

In respect of the first (a), the claim of nonliability is rested upon the following clause in the policy:

"Condition C. Privilege is granted under this policy to make such repairs and ordinary alterations as are necessary to the care of the premises and their maintenance in good condition, including ordinary repairs of the elevator plant and the renewal of its existing mechanical equipment, but this policy does not cover on account of injuries or death caused to or by any person engaged in the making of alterations or additions of a structural character, unless a written permit is granted by the corporation specifically describing the work, and an additional premium paid therefor."

[2] It is urged that, as the roof was almost entirely destroyed, plaintiff could no more construct a new one, within the terms of the policy, than it could rebuild, in case the premises had been entirely consumed. The building, however, was not wholly destroyed, but only partially damaged, and we are concerned only with the conditions as they actually exist. If, in fact, there had been a total destruction, the question of repairs would not apply, as that term contemplates an existing structure which has become imperfect from the action of the elements or otherwise. Gagnon v. United States, 193 U. S. 457, 24 Sup. Ct. 510, 48 L. Ed. 745.

The crux of the case then is: Did the work involve what the policy expressly forbade, unless a written permit was granted by the insurer specifically describing the work to be performed? If it did, and alterations or additions of a structural character were made without the insurer's consent and the payment of the additional premium provided for, plaintiff cannot succeed.

In considering this proposition and for the sake of convenience, the condition clause referred to will be divided into two parts, the first of which will comprise all from the beginning down to and including the words "mechanical equipment." It is important, under the first part, to determine what is meant by the word "repairs." This term has a very broad meaning, and includes restoration to a sound or good state after decay, waste, injury, or partial destruction. 34 Cyc. 1336. It relates to the restoration of an existing condition (Matter of Board of Public Works, 144 N. Y. 444, 39 N. E. 387), and includes new roofing, new plumbing, and whatever is reasonably necessary to keep up a house. Stephens v. Milnor, 24 N. J. Eq. 358, 373. In Weaver v. Templin, 113 Ind. 303, 14 N. E. 600, the Supreme Court laid down the rule that under authority to repair there can be no enlargement

and improvement, except in so far as the work of repairing necessarily enlarges and improves. And in Fritsch v. City of Allegheny, 91 Pa. 228, it was said that "repair" means to restore to sound or good condition after injury or partial destruction. Our Court of Appeals has held that the substitution of a new bulkhead for one that had become useless by decay was a repair, though more durable material was used. Townsend v. Northwestern Ins. Co., 18 N. Y. 168–172. Under the strict rules of the common law, if a tenant covenanted to repair, and the building occupied by him was destroyed by fire or other casualty during the term of the lease, he was required, under his covenant, to erect a new one for the owner even though he was without fault (24 Cyc. 1089); and this was the law of this state prior to 1860. This last example is referred to simply to show how far the courts have gone in defining the word under discussion.

Suppose the roof in this case had been blown off by the wind, could there be any question as to the right of the assured to restore it? It seems to me not. Rann v. Home Ins. Co., 59 N. Y. 387–390. True in the case last cited it was held that the insured was not tied up either to ordinary or even to necessary repairs, and that restoring the roof was an incidental repair. Here the insured was not tied up to ordinary repairs, but only to ordinary alterations; and whether the roof was blown off by the wind or destroyed by fire it was an act of the elements, and could be restored. The repairs were limited to such as were "necessary to the care of the premises and their maintenance in good condition." If it was intended to confer the right to make simple repairs only, plain language should have been employed to restrict such right. A building without a roof is uninhabitable, and to maintain such building in good condition a roof is a sine qua non. Surely this was a necessary repair, and even if it was of a structural nature, so long as it was not an alteration or addition, it was quite within the provisions of the contract.

Has the second part of the condition been in any way violated? Under it the risks excluded were such as arose while alterations or additions of a structural character were being made without the insurer's written permission. It has been held that to make an alteration in a building or thing it is necessary to vary or change the form or nature of such building or thing without destroying its identity. Davenport v. Magoon, 13 Or. 3, 4 Pac. 299, 57 Am. Rep. 1; Chicago Lumber & Coal Co. v. Garmer, 132 Iowa, 282, 109 N. W. 780. And so it has been decided that the removal of a stoop and areaway is an alteration. City of New York v. United States Trust Co., 116 App. Div. 352, 101 N. Y. Supp. 574. In Brown v. Broadway & Seventy-Second St. R. Co., 131 App. Div. 782, 116 N. Y. Supp. 306, it was said that when an alteration or change in a building is spoken of the usual meaning of the phrase is an alteration of the structure itself, as distinct from mere additions to the outside of the building, or mere additions to the building itself which have no relation to its structure and make no change in its character. And in Rickerson v. German-American Ins. Co., 85 Hun, 268, 32 N. Y. Supp. 1027, Judge Van Brunt said:

"The ordinary signification of the word 'addition' seems to be something added to."

Clearly, within the meaning of these terms, it cannot be said that in replacing a roof destroyed by fire either an alteration or an addition of a structural character has been made. There was no change in the structure; nor was anything added to it not there at the time the policy was issued. The terms employed in the condition are clear and, as shown, have well defined meanings. No ambiguity or doubt exists in respect of either of them, and effect should be given to their plain intent.

The conclusion reached by me on this branch of the case is that plaintiff was within its rights when it replaced the roof destroyed with a new one; and that it did not violate the condition in doing the work.

[3] With regard to the second ground (b) presented by the defendant to dismiss the complaint, namely, that the schedule of warranties 4 was violated by the assured, it is sufficient to say that the warranty was not a continuing one. A temporary suspension of business, rendered necessary by an unforeseen occurrence, did not breach the warranty. Am. Ins. Co. v. Brighton Cotton Mfg. Co., 125 Ill. 131, 17 N. E. 771. The words in the warranty, "the premises are occupied as apartment hotel," were a statement in præsenti only; and if the insurer desired to protect itself as to the future use of the building it was obliged to use language plainly importing such intent. Smith v. Mechanics' & Traders' Ins. Co., 32 N. Y. 399; Dolliver v. St. Joseph Fire Marine Ins. Co., 131 Mass. 39; O'Niel v. Buffalo Fire Ins. Co., 3 N. Y. 122.

[4] Referring to the last ground urged for a dismissal of the complaint (c), that the payment made by the plaintiff on account of the loss was not so made within 90 days before this action was brought, the answer furnished by the evidence is that on August 29, 1910, a check was drawn by plaintiff for the sum of $3,767.55 to the order of Lester R. Palmer, but was not paid until September 26, 1910. If the check was accepted in payment on the day it was drawn, then plaintiff's right to recover under the policy is lost, as more than 90 days elapsed between its date and the commencement of the action.

There are, however, two answers to this contention. The first is that condition F of the policy provides that the loss or expense incurred and paid *must* be in money. It is well settled that a check is not a payment of the debt for which it was given, unless taken in absolute satisfaction. There was no proof offered before me when, in point of time, the check was delivered, nor that it was received in payment; and it cannot be given that effect. O'Connor v. Mechanics' Bank, 124 N. Y. 324, 26 N. E. 816; Carroll v. Sweet, 128 N. Y. 19, 27 N. E. 763, 13 L. R. A. 43; Bradford v. Fox, 38 N. Y. 289. The second answer is the check was in fact paid in money on September 26, 1910, and the action was brought on December 24, 1910, just one day within the 90 fixed by the policy.

The motion to dismiss the complaint is denied, and judgment is directed in favor of the plaintiff for the sum of $5,427.11. Exception to defendant.

The findings are returned to the clerk. It is requested that each party serve upon the other a copy of his proposed findings, and that no evidence be included therein to be passed upon by the court; such findings to be submitted within five days.

Judgment accordingly.