SYRACUSE MALLEABLE IRON WORKS v. TRAVELERS' INS. CO.

(Supreme Court, Trial Term, Onondaga County. March 1, 1916.)

1. INSURANCE ⬥435—EMPLOYERS' LIABILITY INSURANCE—EXCEPTED RISKS.
    Where an employers' liability policy excepted the risks of injuries sustained by employés caused by making additions to, alterations in, or constructing the building, the employer could not recover for injuries so caused.

    [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1144; Dec. Dig. ⬥435.]

2. INSURANCE ⬥435—EMPLOYERS' LIABILITY INSURANCE—INJURIES COVERED —"ORDINARY"—"ORDINARY REPAIRS."
    An employer could not recover, on a liability policy which applied to injuries sustained in making "ordinary repairs," but not to those in making additions to, alterations in, or constructing the building, for injuries to employés while replacing the roof and the woodwork destroyed by fire of a part of the building 144 feet long and 58 feet wide, having

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

walls 17 feet high, since the work did not constitute an ordinary repair; "ordinary" being defined as common, usual, established, regular, often recurring.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1144; Dec. Dig. ☞435.

For other definitions, see Words and Phrases, First and Second Series, Ordinary; Ordinary Repair.]

Action by the Syracuse Malleable Iron Works against the Travelers' Insurance Company. Judgment for defendant.

Hiscock, Doheny, Williams & Cowie, of Syracuse, for plaintiff.
H. D. Bailey, of Syracuse, for defendant.

HUBBS, J. The defendant issued to the plaintiff an employers' liability policy in the usual form. While the policy was in force an accident happened which resulted in injury to several employés. One of them brought an action against the plaintiff and recovered a judgment. Thereafter the plaintiff and defendant entered into a stipulation whereby it was agreed that the plaintiff herein might settle the actions brought against it by the other employés, and that the amount paid, and the expenses, should be treated as if paid to satisfy judgments recovered; and it is stipulated in this case that, if the plaintiff is entitled to recover anything, it is entitled to recover $6,399.47, with interest from January 1, 1912.

On August 9, 1910, a fire occurred at the plaintiff's malleable iron works, and resulted in destroying the woodwork in the annealing room and also the roof covering that room. The part of the building called the annealing room was a one-story structure 144 feet long and 58 feet wide, and the walls were 17 feet high, made of brick. After the fire plaintiff started to repair the building and to place thereon a new roof. The work had progressed to a point where the brickwork had been completed and the new roof partially completed, when on the 15th day of December, 1910, the roof, then in process of completion, suddenly gave way and injured employés of the plaintiff, who were engaged in packing malleable castings in annealing pots to go into the kilns. The men injured were regular employés of the plaintiff engaged to do that kind of work.

The sole question involved in this case is whether or not the plaintiff was protected by the policy in question. By consent of the parties the case was tried by the court without a jury. The policy provides that the company will indemnify the insured against loss sustained by it on account of injuries sustained by persons employed by the insured, and whose compensation is included in the declarations contained in the policy and upon which the premium for the policy is computed. The policy also provides that the company shall not be liable for injuries sustained by persons employed by the insured in violation of law and under certain other exceptions specified in the policy. It then contains a clause marked "Operations Covered—VI," which reads as follows:

"This agreement shall apply to such injuries so sustained by reason of the business operations described in said declarations, and shall include the work of making ordinary repairs for the preservation of machinery or buildings

and the renewal of existing mechanical equipment. Unless a permit describ-ing the work to be undertaken, signed by an officer of the company, is hereto attached, this agreement shall not apply to such injuries so sustained, if caused by making additions to, alterations in, or the construction or demolition of any building, structure, or plant, or by the installation of mechanical equipment in any building or part of building not previously occupied by the assured."

An analysis of subdivision VI discloses that the agreement shall apply, first, to injuries sustained by reason of the business operations described in said declaration; and, second, shall include the work of making *ordinary* repairs for the preservation of machinery and build-ings. The business operations described in said declaration, referred to above and made a part of the policy, are as follows:

"Description of business operations to be insured: Malleable iron works, in-cluding incidental machine shopwork and metal pattern making—wooden pattern making."

So the policy covers, according to its terms, injuries sustained by reason of the business of malleable iron works, including incidental machine shopwork and metal pattern making, wooden pattern mak-ing, and the work of making ordinary repairs for the preservation of machinery or buildings.

[1] The second half of subdivision VI provides that the agreement shall not apply to such injuries so sustained, if caused by making ad-ditions to, alterations in, or the construction of any building, structure, or plant, unless a permit describing the work to be undertaken, signed by an officer of the company, is thereto attached; that is, attached to the policy. The policy says, in plain and unmistakable language, that the agreement shall not apply to such injuries so sustained, if caused by making additions, alterations, etc., and by that statement injuries sustained or caused by making additions, etc., are specifically excluded from the injuries covered by the policy, unless the insured does something required by the policy, to wit, procures a written per-mit describing the work to be undertaken, signed by an officer of the company and attached to the policy. It is conceded that no such permit was secured by the plaintiff and attached to the policy. Clearly, if the injuries sustained by the employés in question were caused by making additions to, alterations in, or the construction of the building, there can be no recovery, because such risks are excepted risks under the policy and by its terms excluded from the coverage of the policy. Draper v. Oswego County Fire Relief Association, 190 N. Y. 12, 82 N. E. 755; Mason-Henry Press v. Ætna Life Insurance Co., 146 App. Div. 181, 130 N. Y. Supp. 961, affirmed 211 N. Y. 489, 105 N. E. 826.

[2] The plaintiff contends, however, that it is entitled to recover because the injuries sustained by its said employés were sustained by them as the result of the work of "making *ordinary* repairs for the preservation of machinery or buildings." In other words, the plaintiff contends that the work going on at the time when the said employés were injured was the work of making *ordinary* repairs. The determination of that question disposes of this case. If the work

being done was that of making ordinary repairs, then the plaintiff is entitled to recover. If, however, that work was not the work of making ordinary repairs, then there can be no recovery in this case.

The plaintiff relies principally upon the case of Harbor & S. B. & S. Ass'n v. E. L. Assur. Corp., 79 Misc. Rep. 150, 140 N. Y. Supp. 717, affirmed in 159 App. Div. 900, 143 N. Y. Supp. 1120, and 213 N. Y. 667, 107 N. E. 1078, without opinion. In that case a fire had damaged the apartment hotel owned by the plaintiff, destroying the three upper floors and the entire roof. While repairs were being made to the building, by restoring the three upper floors and placing a new roof on the building, a person was injured, and the insurance company, defendant in that action, denied liability under its policy. The insured defended the action brought against it by the person injured, a recovery was had, the plaintiff paid the amount of the judgment, and brought an action against the insurance company upon its policy. The policy in that case contained a provision as follows:

"Condition C.—Privilege is granted under this policy to make such repairs and ordinary alterations as are necessary to the care of the premises and their maintenance in good condition, including the ordinary repairs to the elevator plant and the renewal of its existing mechanical equipment; but this policy does not cover on account of injuries or death caused to or by any person engaged in the making of alterations or additions of a structural character, unless a written permit is granted by the corporation specifically describing the work and an additional premium paid therefor."

It will be noticed that the repairs permitted under this clause are not *ordinary* repairs as in the policy in the case at bar, but are such repairs as are *necessary*, and the trial justice in his opinion, at the bottom of page 154 of 79 Misc. Rep. (240 N. Y. Supp. 717), carefully points out that distinction and holds that the work being done of restoring three upper floors and placing a roof on the building was a necessary repair. The holding has been affirmed by the Appellate Division and by the Court of Appeals, and if the policy in this case contained the same provision I should feel that the decision in that case would be binding upon me here, although the work done in this case was somewhat different.

There is a great difference, however, between granting permission in a policy to make *necessary* repairs and granting permission to make *ordinary* repairs. I think almost any one would say that the replacing of a roof on a building which had been blown or burned off was a *necessary* repair to preserve the building, but it can hardly be said that the replacing of a roof on a building 144 feet long by 58 feet wide and the work in connection therewith that was done on the building in question would constitute an *ordinary* repair. In 21 American & English Encyclopedia of Law (2d Ed.) at page 1005, it is said: "Ordinary is defined as common; usual; established; regular; often recurring." See also the cases referred to in the note, which contain many illustrations of the way in which the word "ordinary" has been construed by the courts. See also 29 Cyc. 1523, and notes.

In the case of Rann et al. v. Home Insurance Company, 59 N. Y. 387, an insurance policy gave permission to make incidental repairs for the period of five days without notice or indorsement. The plain-

tiff commenced to put on new siding on the house insured in place of the old, which has become dilapidated. Within five days the building burned and the insurance company defended. The court said:

"The repairs permitted by the policy are not merely *ordinary* repairs, but *'incidental'*—that is, occasional—repairs, such as are not regular, but as occasion may require, or are proper to be made, to restore or keep the building in proper condition. The restoration of a roof blown off by the winds, the putting on of clapboards torn off by lightning, would be incidental repairs, and within the permit of the policy, although they could hardly be called ordinary repairs. *The insured was not tied up either to ordinary or even to necessary repairs.*"

The work being done was not "the work of making ordinary repairs," the policy did not cover it, and judgment is therefore ordered for the defendant.